May it please the Court of Counsel, Jeff Wilkinson for Appellant James W. Fowler Company. As I read the district court decision below that was essentially adopted wholesale from Magistrate Hubel, the case comes down to two cases and two competing views of the extent of Oregon's long-arm statute and the constitutional due process for purposes of personal jurisdiction. The two cases are White v. Solmonetti, which is an Oregon Supreme Court decision from 1968, and Gray v. Hurstenburg, which is a Ninth Circuit case of somewhat more recent vintage. I would note, interestingly, that the Gray case does not cite State ex-rel White v. Solmonetti. And it's an important fact because the highest court in this state, the Oregon Supreme Court in 1968, held on these facts that sufficient contacts are present under Oregon's long-arm statute, which was then codified at ORAS Chapter 14 and what has later become ORAS CP 4L, that a contact between a Lake Oswego lumber dealer and an entity in Florida for the purpose of purchasing plywood in a single transaction was sufficient in and of itself to warrant the exercise of personal jurisdiction in the state of Oregon against that defendant on a theory of breach and causation damages. The district court below, and in particular Judge Magistrate Hubel's decision, distinguished the State ex-rel White v. Solmonetti case by suggesting that, and I'm particularly looking to the findings and recommendations at Evidence Record 103, where the magistrate says that he distinguishes White lumber sales because the non-resident defendant in that case initiated the transaction. That's the sole distinction that the magistrate applied to that case, distinguish it from Gray. Now, Gray, on the other hand, is a case where the Ninth Circuit reversed Judge Marsh in a transaction where it was a single sale transaction, very much unlike the one that we have before the court now. In Gray, the circumstances were that the plaintiff decided to purchase a piece of equipment from a defendant in Illinois. There was one visit from Oregon to Illinois. The equipment was examined, determined to be somewhat less than worth the purchase price. A discount of $1,000 was given, and the sale was consummated. Money was exchanged. The equipment was delivered to Oregon. Judge Marsh initially held in the lower court that those circumstances warranted exercise of personal jurisdiction. Ninth Circuit came back and said, and this is in 1990, that no, a mere contract in and of itself doesn't warrant the extension of personal jurisdiction. Now, the interesting thing is, as I mentioned earlier, is that the Gray case doesn't cite State ex-rel White v. Solmonetti, and yet since that case, that is before and after the Gray case, the Oregon Supreme Court has twice reaffirmed the State ex-rel White v. Solmonetti case on personal jurisdiction grounds. It is an obvious question to ask, how does the circumstances in White, where there was a single transaction, one exchange of money, and one delivery of goods to Oregon, how is that different than the case here, which is essentially complete? Are you confident that you have the transaction in White correct as you represent it? Was it a delivery in Oregon or a purchase from Oregon? I haven't read the case recently, but I thought it was a purchase from Oregon, and the court went into some detail about the consequences in Oregon of producing what the buyer outside the State had ordered. Now, we're going to check that, and I may be totally wrong. I do stand corrected. The purchase was from the manufacturer in Oregon to Florida. And then the court, as I recall, went into some detail about what it meant to manufacture something in Oregon and the economic consequences that a purchase of a carload of lumber or plywood would have in Oregon, right? Actually, I would disagree in this respect, and that is the court in XRO White went into a fairly lengthy discussion of whether the foreseeable consequences of transacting business would have consequences here. Now, I doubt that it makes any difference, really, as the analysis of this case, because you contend that if there's a contract to be performed, it's going to have consequences here and by way of public works and one thing or another here. Now, let me just, while we're visiting here, since there was no evidentiary here, it's your contention that it is sufficient if you presented a prima facie case of jurisdiction. Yes. Now, does that of necessity have to include a prima facie case of the existence of a contract? We have to show a prima facie case that the court can exercise personal jurisdiction. Yeah, but that's not an answer to my question. Let me answer the second, which is actually your question, and that is, for there to be personal jurisdiction in this case, we concede that it has to be limited jurisdiction and therefore has to arise out of the transaction between the parties. And that has to rise to the level of a contract. Right, and our complaint alleges two theories, breach, warranty. All right, now, is it enough for you to simply rest on your complaint that alleges a contract and a breach of warranty, or can we look at the affidavits that detail all of the interchanges that give rise to a prima facie case or not of a contract? I think you are free to look at the underlying affidavits. All right, then when do you claim that this contract was entered into? When, at what point in all this interchange do you arrive at a point where you say the court can look at that and know that it's a prima facie case of contract? The allegation is a complaint, and we contend that the contract came about by virtue of a promissory estoppel, in other words, conduct that we relied upon justifiably the day before bid day when they telephoned and said, here's our price. It's not an exact price, but it's within 5% of what we think we can do. And if we justifiably relied on that, then we have shown a prima facie case for breach of contract, substituting promissory estoppel for what would otherwise be consideration. All right, and that any cancellation of a so-called order to the Colorado entity is of no moment? It is merely evidence that may be presented on the merits of the trial to determine whether or not we actually relied upon it or we did not rely upon it. But at this stage in the proceedings, our allegation of reliance and any evidence that supports that is sufficient. I think the court is required to take the allegations of the complaint and our affidavits in the light most favorable to us, as well as any conflicts between the affidavits that we present and the defendants. Well, surely you don't contend that you could just say we rely on our complaint for a prima facie showing of, no, you don't do that. All right. Thank you. See, I'm down to a minute and 43, so. All right. Thank you. Okay, Mr. Hanson, please proceed. May it please the court, Jeff Hanson for appellee Norkamp. I'd like to first start out with a clarification of the facts in white. And, in fact, Your Honor, you are correct that the court analyzed that case because white lumber had solicited a free carload of lumber and the lumber was to be manufactured in Grants Pass, Oregon. The solicitation came to a company, Continental, in Lake Oswego. This was not the first transaction that white had engaged in with Continental, as is set out in the facts of that case. So there had been a prior relationship between the parties, and then there had been a request for purchase of free carloads of lumber. Reliance on that order caused a mill in Grants Pass to begin manufacturing lumber for these free carloads to be shipped. That is not what occurred here. What occurred here is contact from the state of Oregon to Illinois. The issue of whether we purposefully availed ourselves, if you look at the factors, it's clear that the contacts came from the state of Oregon and that Norkamp's contacts back were reactive. They cite to the website as one indicia of some sort of purposeful availment. And the website was, the only interactive nature of that website was the fact that you could send an email to Illinois. No emails had been sent from Oregon to Illinois. There had been no hits by any company soliciting anything from the Illinois company, from my client, out of the state of Oregon. The advertisement, it was a global advertisement. There was no purposefully, nothing was purposefully directed to the state of Oregon. In the Zippo formulation, where do you put your website? On a sliding scale, it is at the very close to non-interactive status, Your Honor. Yes, I've looked at your website. And I see that there is a request for information, but there is no 800 number. No 800 number, Your Honor. And when we look, we look at the Ninth Circuit case. It was a cyber. Was it tape heads, Your Honor? Pardon? Tape heads. Cyber. Cyber cell. And cyber cell felt that an 800 number was very important. An important factor because it allowed it a toll-free ability to contact that company. If you were interested, because this is a new field for us when it comes to personal jurisdiction, the imposition of websites. And the question is whether, at what point does a website cease being an advertisement and then becomes, comes within the rubric of personal jurisdiction? And I think you have to look at factors such as whether you can place an order on the website. Whether there's some sort of interactive nature other than just simply requesting information, sending an e-mail to the company requesting information. It might be the late night websites selling everything for $19.95. That would be like at the top of the sliding scale. Correct. And advertisement of your website in, that's purposefully directed to a particular state with, you know, the www.whatever. Or some sort of purposefully, purposeful advertisement when you're on, when you are interacting with your online service provider. Thank you, sir. Additionally, there was the discussion earlier regarding whether a contract was actually formed and what you can look at in determining whether a contract was formed. We believe you must look at the affidavits and that plaintiff cannot simply rely on their complaint. We also believe that the affidavits that have been submitted clearly show that there was no contract formed. Mr. Wilkinson indicated that the contract was formed through promissory estoppel at the time they relied upon a bid. Well, after that occurred, there was clearly no meeting of the minds on material terms. It was an approximate quote. Delivery schedules hadn't been discussed. The affidavits make clear that substantial additional documentation was required to be provided by the plaintiff to the defendant in Illinois in order for NORCM to even be able to put a reasonable quote together. What was the, could you just put in context for me your client's view of what it quoted on and how that fits into the whole contract that Fowler was working on? Are you asking what was quoted on to? What was the quote given by NORCM to Fowler? To Fowler. For what material and how did that fit into what Fowler was trying to bid on? Originally, they had requested a price for the same specifications, the same items that the Colorado company was going to provide. An approximation, an approximate price was provided at that time. Subsequent to that, these specifications of what was actually being required was provided. A quote was provided for the system, for a complete system from NORCM. NORCM was then issued a purchase order. When the price was sent from NORCM to Fowler, they rejected the price and canceled the purchase order. The purchase order that was issued didn't relate to the pre-bid negotiations that occurred with the Colorado company and it didn't have the material terms. There were no price terms. Now, we also know from the Gray case that a contract alone isn't sufficient to establish jurisdiction. There has to be more. And here, our contention is you don't have a contract, but even if you did have a contract, you've got to show more. You have to show that we purposefully availed ourselves to the residents of the foreign state. And that purposeful availment did not occur. Well, but why is that different from white lumber? Because in white lumber, there was no performance either, right? There was an order confirmed with a purchase order. But the point being, if there was a contract here, if there was a contract, it was to do some things right here in Oregon. Correct. And if there is a contract, isn't that, isn't this case over for you? This issue is finished, isn't it? I don't believe so, Your Honor. If you look at the Gray case, a contract was formed. Yeah, but in this case, in this case, with all that was according to the plainest version of this contract, there was things to be done in Oregon and consequences in Oregon, particularly on a public work. Though there was as the as the as Magistrate Hubel pointed out, the contracts with this state were minimal at best. But if the contract was to be performed, it would have been substantial, would it not? No, I think if you look at the magistrate's decision, he indicates that it was very. OK. OK, I'll do that. I've done it once and I'll do it again. I think in some that the installation would be made by the manufacturer training by the manufacturer to the purchaser's personnel. Correct. And availability to come in and do any repairs. Correct. I think that's the summation of the. And that's that's our contention is what has been established by the affidavits. And we're talking minimal amounts of time. I think it was a total of four days, two for installation and two for training. And your your submission is it just depends on the extent of the participation. Correct. And that and whether the participation is going to be continued. I think that's an important point as to whether there's going to be some sort of continuing relationship. And there's nothing in the record that indicates a continuing relationship. Would there be a warranty on what was delivered? There is a warranty on what was delivered. The that would be the only continuing contacts that would require is if there was a problem with the equipment. Right. If there's no problem with the equipment, there's absolutely no further contact between our client and and feller company. I think your time is up. My colleagues have a question. Thank you. Thank you very much for your argument. I have just three brief points. Unless you have questions. The first regarding white, the Supreme Court in the state after a white did not make that case turn on. Actually, it was a order of 20 boxcars, I think, of lumber or the fact that there have been private relations between the parties. In fact, at page 728 decision, the court said it was clear that the placing of the telephone order had effects for significant contacts in Oregon. And it's important that you know that it was not the actual production so much as the fact that they made the order. And it would have significant consequences to the plaintiffs here, not merely promised to do warranty work. The warranty work could be worth hundreds of thousands of dollars. And the consequence is substantial. If the equipment fails, they also promised to come and do service and actual onsite training for four days. And they anticipated traveling here. So the idea of a burden on the defendant when they anticipate traveling apparently all over the globe, let alone to little Oregon, is not particularly great. Finally, about the website, which it is an intriguing issue that we're all faced with. The advance of technology is such that the substitution of a website for an 800 number is not a substantial difference in what NORCAM is intending to do to the rest of the world with regard to its commercial interest. This website seems to me doesn't get you very far. It's not a website where people can order anything. All they can do is leave a message. The nature of this equipment is such that it's not pick one, two, three and order it off the shelf. It requires interaction. And that's what they invite when they invite you to enter and then email them or contact them directly. But you can't buy anything on the website. That is correct. It is a mere means to initiate contact. I see I'm out of time unless you have questions. Well, let's see. I don't have further. Thank you very much. No, thank you. Very nice argument from both sides. We appreciate it. The case will be submitted.
judges: Aldisert , Leavy, Gould